Our fifth case for this morning is Robinson v. Cynthia Hagan, trustee, or if you will, bankruptcy estate of Anna Robinson. May it please the court, my name is Cynthia Hagan, the Chapter 7 bankruptcy trustee for the bankruptcy estate of Anna Robinson. And this case involves section 1001A of the Illinois personal property exemption statute. The bankruptcy court found that 1001A did not apply to the debtor's valuable nearly 200-year-old book of Mormon. The district court reversed, finding that 12001A applies in an unlimited amount to the items in the list. The district court's decision allowing that exemption was in error and should be reversed. First, the district court... Could I just say, cutting to the chase, the language of the Illinois statute doesn't say Bibles below the value of $20 or whatever some appropriate number would be. And actually on this list, Bibles are not the only thing whose value could vary. I can recall cases in which people have had family photographs, but they happen to include Woodrow Wilson or Theodore Roosevelt in the photograph and there was some independent value. If Illinois wants to exempt even the occasional very valuable Bible, where in the statutory text do we get the exception you're arguing for? I think we have to interpret this section in the context of the personal property exemption as a whole and the intent of that. But when I look at the rest of this section, the very next part, subpart B, actually puts a number in. Equity interest not to exceed $4,000 in value in any other property. So it's pretty glaring that there is no limit like that in part A. Well, there isn't a dollar limit. I would refer the court back to the first time that we had this 1001A language, which was 1877. There were only two categories of property exempt. The first is the direct predecessor to 1001A, the necessary wearing apparel, Bibles, school books, and family pictures, and there was only one other category. That second category exempted $100 worth of all other property. And it's hard for me to imagine that the legislature intended that that first category could exempt tens of thousands, even theoretically millions of dollars in these personal items. But don't you think the legislature rationally could have thought that in the grand majority of cases, these items, the wearing apparel, the Bible, the school books, the family pictures, are probably not going to amount to that much? Rather than write some hopelessly complicated statute just to say, you know, maybe now and then there will be a school book that George Washington used or something, and so it's valuable. But it's easier just to write a straightforward exemption. I don't think that the legislature ever contemplated that there would be items of Bible, school books, or family pictures that were so valuable. And what do we do about that? What if I agree with you that it never crossed their collective mind? Assuming they have a collective mind. Then we interpret it in the context of the statute. It never crossed their mind, but it still doesn't have a dollar limit in it. Why doesn't one say that the penultimate paragraph of this statute, the one that says, if the debtor owns property exempt, and he got it basically in anticipation of bankruptcy. If he converted non-exempt property to exempt property, that just cancels the exemption. So you can't buy property for the purpose of getting the exemption. The exemption covers only things that you have by happenstance. And we know that to be true because the legislature did add that language to the end of 101. The legislature's got that right there. Why doesn't one say that that is the control against the purchase of valuable Bibles or the purchase of a $100,000 ball gown or, right? You name it. That's the control, not putting a dollar limit that doesn't exist into the statute. Well, the US Supreme Court, in affirming this court's decision in Clark, the inherited IRA case. That case dealt with the interpretation of a federal statute. We're dealing here with the interpretation of a state statute, presumably using whatever tools of interpretation states use to interpret state statutes. I agree. But it's still the idea that exemption statutes, with those, the inquiry must be an objective one. The inquiry can't be a subject. No, that just assumes that Illinois is using the same criteria that federal courts do. Clark, as I say, is a case about the meaning of two federal statutes and no state statutes. Then we'll look to what the Illinois Supreme Court said in Logston, in Ray Marriage of Logston, which was a 12-101 case, and pointed out that the legislature's intent with 12-101 was to prevent a debtor from being completely deprived of his means of supporting his family and from becoming a public charge. And this court cited that same language in Barker, which was the stacking case, also a 12-101 case. And in Schreyer in 1960, that was an Illinois insurance exemption, said that the chief objectives of the exemption laws are to protect the debtor in his subsistence, his family to whom he is obligated to support, and the public. So we're always interpreting the provisions in the context of that larger scheme. And let's not forget that the reason there's an exemption statute to begin with is because we have the principle that creditors should be paid on their claims. So that's where we start from, that the debtor owes money. I don't understand where you get that. That would amount to there shall be no exemption statutes. But under federal law, you get your choice between federal and state exemptions. How big the state exemptions are is up to the states. And what we observe is a state statute that's got a dollar limit for some clauses, no dollar limit for other clauses, and a catch-all clause that says you can't move property from non-exempt into exempt, and the final sentence says property acquired within six months of the filing of a petition for bankruptcy shall be presumed to have been acquired in contemplation of bankruptcy. It looks like that's the state scheme, and this property wasn't acquired within six months. Well, no, it wasn't. But we have to interpret the statute in a logical manner. If we had a copy of the Gutenberg Bible here estimated to be valued at $25 million, it is hard to imagine that we could say that the legislature ---- unless the bankruptcy proceeding is having been brought in bad faith, because the debtor was not, in fact, bankrupt. Debtors often file bankruptcy with property. Is there any doubt that this debtor is bankrupt, that this debtor has debt succeeding her total assets, including exempt assets? Pretty close. It's pretty close. If your argument is that the debtor's assets exceed the debt, you might be able to make an argument that this is a bad faith bankruptcy. I never made the argument that this is a bad faith bankruptcy. Obviously that's not an argument that's been made. No, Your Honor, and this debtor knew that this property may or may not be exempt. That wasn't even stated in her schedules, and she chose, rather than to file a Chapter 13, she'll file a Chapter 7. Right, and I take it that there's some $23,000, $24,000 in debt. This would, you know, maybe cover 45% of the debts if you could get it, but then we're back to our statutory debate about what 1001A actually does. That's correct. I see my time's up. I'd like to reserve your rebuttal time. Thank you. Certainly. Mr. Herbert. May it please the Court, I represent the appellee. The district court was correct in overturning the bankruptcy court. The plain meaning of the statute allows for the exemption of a Bible. Just one Bible? She apparently has 14 of them or so of the Book of Mormon. Does she have to pick one? It uses the word Bible. If we're going to be that picky about the statute, I'm going to say it uses the word Bible. Word is singular and everything else is plural. Yes. And the debtor's counsel in going through picked a Bible, this particular one. So she's giving up all of her other Books of Mormon? She didn't claim any exemption in them, which I think even though this is not, here's the 800-pound gorilla in the room, I believe. It wasn't the focus of anybody's argument. But to say that this exemption statute was really intended for only Bibles of ordinary value, not the extraordinary value, is disingenuous. We do this all the time, by the way, to prisoners. We tell them that they can have one modest copy of whatever religious text they happen to follow, whether it's a Christian Bible or whether it's the Book of Mormon or whether it's something else, Koran frequently, and we don't let them pick and choose which edition they're using. Well, I would agree that's entirely appropriate for prisoners, but that's a different class of persons. I'm just saying there's some precedent in the law for saying, you know, bankruptcy should not deprive you of your access to your religion. That would be an intolerable and completely unnecessary result. And so, not surprisingly, this singles out a Bible as one of the things that is exempt from judgment. Some Bibles are valuable. They're older. People keep them in the family for generations, but you're allowed to pick one and exempt it. And that's exactly what the debtor did in this case. But if you go in a hotel room and you find a Gideon Bible that costs $10 or something, trustee has never opened a paying estate for a $10 Bible. This statute is really not intended for the Bible of ordinary value under $100 because it's de minimis. Well, I mean, but maybe it is. I was just going to say so are other things. I'm sure the trustee has no interest whatsoever in most people's family pictures. Or they're wearing apparel. We're on a dangerous precedent. One possible understanding of something like sub A is that this is an anti-extortion statute, that these are things of negligible, presumptively of negligible market value, but which would be big psychological losses if taken away from the debtor and which might get the debtor to do other things that the trustee or the creditor is faking. So if a state court had implied that this, things under A, are covered only when they're of negligible market value, that might make perfect sense. But then nobody can point to a state court decision saying that. That's true. But the practical reality is that the trustees don't open estates for all the other Bibles. This trustee, even though those are the Bibles that this client has, weren't exempt. She didn't open up an estate over those because they're irrelevant to her. Of course not. But following what Judge Easterbrook was saying, if she were assured that the copy that she uses for her daily religious devotion of the Book of Mormon, which I take it is not this one because it's in fragile condition, was available to her, then the anti-extortion or the protective purpose of the statute would be satisfied. And the creditors, I mean, just give or take, between maybe 45% or so or 40% to 45% of the debt would be covered. And of course Chapter 7 isn't to be used in a way that prevents creditors from being paid when they're assets, or at least in part. It's not 100 cents in the dollar. I agree with a large portion of that reasoning, but with all due respect, I think that that starts from a premise that I disagree with, that the purpose of this statute is to protect a Bible for daily devotional purposes. That got seized out of thin air. Why would that be the primary reason people have a Bible? Well, people use Bibles for other things, recording births and deaths and marriages and family trees. Yeah, and so I should have asked this question of Ms. Hagen, but I wonder what the trustee would think if Robinson had recorded family genealogy in the 1830 Bible. That's an excellent point, which I touched on indirectly in my briefing below. At the district court level. The district court mentioned Payne v. Wood, which was a case out of this court. And they said necessary wearing apparel is exempt without regard to value. Do you get to keep your Versace and all the rest of these things? Yes. If there's no limitation as to value in that statute that covers clothes, where does it creep in as to the other items? Okay, it's not there for clothes, but it's there for school books, family pictures, or Bibles. If it's not there, it's not there. Of course, that was this court. It wasn't Illinois. That's true. Thank you, Your Honors. All right. Thank you very much. Anything further, Ms. Hagen? To address Judge Easterbrook's point, it wouldn't matter if there was personal information written in the Bible. That would depreciate its value, I would think, as an original addition, if you started scribbling all over it and putting your personal information in there. It might. With the Book of Mormon, it might. Look at that Joseph Smith's personal thing. That's a different thing. It would depend on the family. But the focus has to be on an objective one, looking at the property, and not how devout the person is, what the person used it for. As for the Payne case, this court wasn't asked to actually interpret the statute at that time. It was divvying up the proceeds of an insurance claim. All right. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisory.